UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| MISTY CASTRO, | ) | Case No.: 12-CV-00630-LHK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART PLAINTIFF'S |
| v. | ) | MOTION FOR DEFAULT JUDGMENT |
| | ) | |
| COMMERCIAL RECOVERY | ) | |
| SYSTEMS, INC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Misty Castro moves for default judgment against Defendant Commercial Recovery Systems, Inc. ("CRS"). Pursuant to Civ. L.R. 7-1(b), the Court finds this matter appropriate for resolution without oral argument and therefore VACATES the hearing set for March 13, 2014. For the reasons set forth below, Plaintiff's motion is GRANTED in part and DENIED in part.

I.      BACKGROUND

In her June 6, 2013 Complaint (ECF No. 1), Castro, an individual resident of San Benito County, California, alleges the following. Castro allegedly owes a debt arising from "transactions for personal, family, and household purposes." Compl. at 2. In March and April 2013, CRS placed collection calls to Castro in connection with the alleged debt. *Id.* On March 13, 2013, CRS allegedly called Castro at her workplace and threatened to garnish Castro's wages. *Id.* at 3. Castro

1

responded by e-mailing a CRS representative and stating that Castro was not allowed to receive collection calls at work, but on April 8, 2013, CRS made additional collection calls to Castro at her place of employment.  *Id.*

In her Complaint, Castro claims that CRS's pattern of collection calls entitles her to relief under the Federal Fair Debt Collection Practices Act ("Fair Debt Act"), 15 U.S.C. § 1692, and the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code §§ 1788-1788.33, including statutory damages, reasonable attorney fees, and the costs of her action.  *Id.* at 3-4.

On June 26, 2013, Castro served CRS with a summons and complaint, and then filed a corresponding proof of service on July 9, 2013.  (*See* ECF No. 4.)  Upon Castro's motion, the Court Clerk entered default as to CRS on September 3, 2013.  (*See* ECF No. 6.)  Castro now moves the Court to enter a default judgment against CRS under Fed. R. Civ. P. 55(b)(2) and requests an award of $2,000.00 in damages, $2,824.90 in attorney fees, and $465.00 in costs.  Pl.'s Mot. at 18.

## II.    LEGAL STANDARD

"The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  After entry of default under Fed. R. Civ. P. 55(a), the Court may enter a default judgment against the defaulting party.  *See* Fed. R. Civ. P. 55(b)(2).  "A failure to make a timely answer to a properly served complaint will justify the entry of a default judgment."  *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986).  "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)) (quotation marks omitted).  "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to

1   excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure

2   favoring decisions on the merits."  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

3         "When entry of judgment is sought against a party who has failed to plead or otherwise

4   defend, a district court has an affirmative duty to look into its jurisdiction over both the subject

5   matter and the parties.  A judgment entered without personal jurisdiction over the parties is void."

6   *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted).

7   **III.    ANALYSIS**

8         **A.    Jurisdiction**

9              **1.    Subject Matter Jurisdiction**

10        This Court has subject matter jurisdiction over Castro's Fair Debt Act claim under 15

11  U.S.C. § 1692k(d): "An action to enforce any liability created by this subchapter may be brought in

12  any appropriate United States district court without regard to the amount in controversy . . . within

13  one year from the date on which the violation occurs."  Castro filed her complaint on June 6, 2013,

14  well within one year of CRS's alleged violations in March and April 2013.  In addition, this Court

15  has supplemental jurisdiction over Castro's Rosenthal Act claim under 28 U.S.C. § 1367.

16             **2.    Personal Jurisdiction**

17        No federal statute governs personal jurisdiction in cases involving the Fair Debt Act.  *See*

18  *Maloon v. Schwartz, Zweban & Slingbaum, L.L.P.*, 399 F. Supp. 2d 1108, 1111 (D. Haw. 2005).

19  Therefore, California state law applies.  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320

20  (9th Cir. 1998) (citing *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993)).

21  California courts "may exercise jurisdiction on any basis not inconsistent with the Constitution of

22  this state or of the United States."  Cal. Civ. Proc. Code § 410.10.  Accordingly, as long as the

23  requirements of the Due Process Clause of the United States Constitution are satisfied, this Court's

24  exercise of personal jurisdiction over Defendants is proper.  *See Panavision*, 141 F.3d at 1320.

25  "Due process requires that a defendant have minimum contacts with the forum 'such that the

26  maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"

27  *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1259 (9th Cir. 1989) (quoting *Int'l*

28

Case No.: 13-CV-02555-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

**United States District Court**
For the Northern District of California

*Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "Personal jurisdiction may be founded on either general jurisdiction or specific jurisdiction."  *Panavision*, 141 F.3d at 1320.

Regarding CRS, Castro alleges only that CRS has "an office in Dallas, Texas," and does not allege facts to support a conclusion that CRS has conducted substantial or "continuous and systematic" activities in California.  Compl. at 2.  Therefore, there is no apparent basis for general jurisdiction.[1]  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).  The Ninth Circuit applies a three-part test for specific jurisdiction:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.

*Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995) (quotation and alterations omitted).

### i.   Purposeful Availment

"Purposeful availment requires that the defendant have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state."  *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988)) (quotation marks omitted).  "The touchstone is whether the 'defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'"  *Gordy v. Daily News, L.P.*, 95 F.3d 829, 832 (9th Cir. 1996) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  "The requisite connection, however, need not involve physical entry into the forum."  *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Here, CRS performed an affirmative act through its agent—calling Castro at both her personal and work numbers—that would allow CRS to transact business in the forum state, *i.e.*, collect Castro's debt.  Presumably, CRS knew that attempting to collect debts in California could

---

[1]     Based on public court records, CRS has been involved in multiple lawsuits in this district related to fair debt collection practices.  *See, e.g.*, *Cacioppo v. Commercial Recovery Sys., Inc.*, No. 12-CV-06391 (N.D. Cal. Nov. 26, 2013).

Case No.: 13-CV-02555-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

United States District Court
For the Northern District of California

1    subject it to liability in that state.  It is also likely that CRS's employee(s) knew, in placing the

2    calls, that the calls were to California.  Even though there is no allegation that CRS ever physically

3    entered the state, CRS's employees' conduct created a connection with the forum state such that

4    CRS should have reasonably anticipated being haled into a California court.  The fact that CRS had

5    only a few contacts with the state does not change the analysis.  *See Maloon*, 399 F. Supp. 2d at

6    1113 (finding personal jurisdiction over a defendant debt collector whose only contact with the

7    forum was a single debt collection letter); *Paradise v. Robinson & Hoover*, 883 F. Supp. 521, 525

8    (D. Nev. 1995) ("[I]t is well-settled that a single contact with the forum state, not involving the

9    physical presence of the defendant, can be a sufficient basis upon which to establish jurisdiction

10   over the defendant.") (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

11          Moreover, this conclusion comports with public policy.  "Where an alleged debtor is

12   located in a jurisdiction and receives documents from a person purporting to be a debt collector

13   located elsewhere, and the transmittal of those documents is claimed to have violated the [Fair

14   Debt] Act, suits may be brought where the debtor . . . receive[s] the communications.  Otherwise,

15   one could invoke the protection of distance and send violative letters with relative impunity, at

16   least so far as less well-funded parties are concerned."  *Sluys v. Hand*, 831 F. Supp. 321, 324

17   (S.D.N.Y. 1993) (citations omitted).

18                              **ii.    Arises Out Of**

19          Castro's claims clearly arise out of CRS's forum-related conduct.  CRS's telephone calls

20   form the entire basis for Castro's suit.

21                              **iii.    Reasonable**

22          As to the third requirement, courts "presume that an otherwise valid exercise of specific

23   jurisdiction is reasonable."  *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) (citing *Sher*, 911

24   F.2d at 1364).  "The burden of convincing [the court] otherwise is on [the defendant]."  *Id.*  Here,

25   this presumption of reasonableness will hold because CRS has not submitted anything to suggest

26   that specific jurisdiction is not reasonable.

27          Because the exercise of specific personal jurisdiction over CRS comports with the

28   requirements of due process, this Court will consider Castro's substantive claims.

Case No.: 13-CV-02555-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

**B.     Claims for Damages**

Upon review of Castro's Complaint, motion for default judgment, and supporting papers, the Court concludes that Castro has sufficiently alleged violations of the Fair Debt and Rosenthal Acts, and is entitled to limited damages as stated below.  Accordingly, *Eitel* factors 2-4 regarding the substantive merits of plaintiff's claim, the sufficiency of the complaint, and the amount of money at stake (*Eitel*, 782 F.2d at 1471) favor entry of default judgment.

**1.     15 U.S.C. § 1692k**

Castro first claims $1,000 in statutory damages pursuant to 15 U.S.C. § 1692k.  An individual who brings suit against "any debt collector who fails to comply" with the Fair Debt Act may claim "damages as the court may allow, but not exceeding $1,000."  15 U.S.C. § 1692k(a)(2)(A).[2]  "In determining the amount of [statutory] liability[,] . . . the court shall consider, among other relevant factors . . . the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  15 U.S.C. § 1692k(b)(1).  Castro alleges that CRS is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and violated the Fair Debt Act, which justifies awarding her the statutory maximum in damages.

Under § 1692a(6), a "debt collector" is, in part, "any person who uses any instrumentality of interstate commerce . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  Castro's allegations establish that CRS is a debt collector. According to the Complaint, CRS is a "debt collection corporation" whose employees called Castro in attempts to collect an alleged debt.

The Fair Debt Act prohibits a variety of collection-related activities, including certain communications with consumers, 15 U.S.C. § 1692c, and "any false, deceptive, or misleading representation or means in connection with the collection of any debt," § 1692e.  Castro claims that

---

[2]     Although the statute also allows for the collection of actual damages, Castro does not seek them.  Rather, she seeks to collect only statutory damages, which is permissible.  *See Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 780 (9th Cir. 1982) ("There is no indication in the statute that award of statutory damages must be based on proof of actual damages.").

United States District Court
For the Northern District of California

CRS's collection calls fit into four categories of such prohibited activities: (1) communicating with Castro at her "place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication," § 1692c(a)(3); (2) generally using false, deceptive, and misleading representations, § 1692e; (3) threatening garnishment of wages, where such action was not lawful and the debt collector did not intend to take such action, § 1692e(4); and (4) using a "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," § 1692e(10).  *See* Compl. at 3.

In determining whether a communication violates the Fair Debt Act, courts in the Ninth Circuit "assess the impact that the [communication] would have on the least sophisticated debtor." *Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1460 (C.D. Cal. 1991) (citing *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1988)).  "The 'least sophisticated debtor' is an objective standard."  *Hosseinzadeh v. M.R.S. Assocs., Inc.*, 387 F. Supp. 2d 1104, 1114 (C.D. Cal. 2005) (citing *Swanson*, 869 F.2d at 1227) (footnote omitted).  Accepting as true Castro's allegations that "Defendant has not obtained a judgment against Plaintiff," and that CRS continued to place collection calls to Castro at her place of employment after receiving notice that Castro could not receive such calls at work, *see* Compl. at 3, CRS's actions violated §§ 1692c and 1692e.  *See, e.g.*, *Horkey v. J.V.D.B. & Assocs.*, 333 F.3d 769, 773 (7th Cir. 2003) (affirming liability under § 1692c(a)(3) where debt collector called place of employment after being informed that such calls were prohibited).

The question, however, is whether CRS's alleged calls on March 13, 2013 (threatening garnishment) and April 8, 2013 (prohibited calls to Castro's place of employment) warrant the statutory maximum in damages.  On one hand, Castro provides only these isolated examples of CRS's conduct that violate the Fair Debt Act.  On the other hand, CRS made prohibited threats and calls to Castro at work after receiving notice that such calls were not allowed, which violated the express purpose of the Fair Debt Act—"to eliminate abusive debt collection practices."  15 U.S.C. §§ 1692(e).  Nevertheless, the Fair Debt Act explicitly lists "frequency and persistence" as factors that the court shall consider in awarding damages.  § 1692k(b)(1).  In this case, these limited

United States District Court
For the Northern District of California

1    instances of calls on two dates were relatively infrequent.  Therefore, the Court finds it would be

2    inappropriate to award the statutory maximum.  *See, e.g.*, *Silva v. Jason Head, PLC*, No. 09-CV-

3    05768, 2010 U.S. Dist. LEXIS 121557, at *14 (N.D. Cal. Nov. 4, 2010) (limiting statutory

4    damages for a "single occurrence").  Instead, this Court awards Castro $750 in damages under

5    § 1692k.

6              **2.       Cal. Civ. Code § 1788.30(b)**

7              Under Cal. Civ. Code § 1788.30(b), "[a]ny debt collector who willfully and knowingly

8    violates" the Rosenthal Act shall "be liable to the debtor . . . for a penalty in such amount as the

9    court may allow, which shall not be less than one hundred dollars ($100) nor greater than one

10   thousand dollars ($1,000)."  Castro alleges that CRS is a "debt collector" as defined by Cal. Civ.

11   Code § 1788.2(c) and violated the Rosenthal Act in two ways: (1) threatening garnishment "despite

12   lacking both the intent and legal right to do so" under § 1788.10; and (2) violating the Fair Debt

13   Act, as incorporated by the Rosenthal Act, § 1788.17.  *See* Compl. at 4.  Generally, violations of

14   the Fair Debt Act also constitute violations of § 1788.17.  *See Hosseinzadeh*, 387 F. Supp. 2d at

15   1118.

16             CRS would be a "debt collector" under the general definition set forth in § 1788.2(c)

17   because it, "in the ordinary course of business, regularly . . . engages in debt collection," as noted

18   above.  Accepting as true Castro's allegations, CRS willfully and knowingly violated the Rosenthal

19   Act by threatening garnishment without having a judgment authorizing such action, and by calling

20   Castro's workplace after being prohibited from doing so.  Therefore, CRS violated the clear

21   purpose of the Rosenthal Act, which is "to prohibit debt collectors from engaging in unfair or

22   deceptive acts or practices in the collection of consumer debts," § 1788.1(b), and is liable under

23   § 1788.30(b).  Accordingly, this Court awards Castro an additional $750 in damages under

24   § 1788.30(b), rather than the statutory maximum of $1,000, for the reasons stated above.

25             **C.       Remaining *Eitel* Factors**

26             The Court concludes that the remaining enumerated *Eitel* factors are consistent with entry

27   of default judgment in this case.  Regarding the possibility of a dispute concerning material facts

28   (factor 5), the alleged facts are readily verifiable through records, and there is a low likelihood that

*United States District Court*
*For the Northern District of California*

8

CRS could successfully contest them.  As to whether default was due to excusable neglect (factor 6), Castro provided sufficient proof of service, CRS never responded or filed any papers, and no circumstances indicate excusable neglect by CRS.  And regarding the possibility of prejudice to the plaintiff and public policy concerns (factors 1 and 7), adjudication on the merits is not possible because CRS has not participated in this case, and Castro may have no recourse if default is denied.  Accordingly, no relevant factors preclude default judgment in this situation.

### D.    Attorney Fees

Both the Fair Debt Act and the Rosenthal Act impose liability for attorney fees and costs on defendants found liable under their respective provisions.  *See* 15 U.S.C. § 1692k(a)(3); Cal. Civ. Code § 1788.30(c).  "District courts must calculate awards for attorneys' fees using the 'lodestar' method."  *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (citations omitted).  "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."  *Id.* (quotation omitted). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it."  *Id.* (citations omitted).  A "district court has a great deal of discretion in determining the reasonableness of the fee."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992)) (quotation marks omitted).

In support of her fee claims, Castro submits a Statement of Services and declaration from her attorney, asserting a total of 6.1 hours of attorney time (at $387 per hour) and 1.6 hours of paralegal time (at $145 per hour) for a total of $2,824.90.  *See* Pl.'s Mot. Ex. 6 (ECF No. 15-6), Ex. 7 (ECF No. 15-7).  However, there are two math discrepancies evident from Castro's fee information.  First, based on the hours itemized in the Statement of Services (Ex. 6 at 1), Castro's attorney and paralegal recorded 5.8 hours and 1.9 hours, respectively—*not* 6.1 hours and 1.6 hours, as the summary sheet (Ex. 6 at 3) indicates (although the total number of 7.7 hours would be the same).  Second, Castro's summary sheet states that her attorney incurred $2,592.90 in fees for 6.1 hours of work.  However, at $387 per hour, this would amount to only $2,360.70.  Therefore, the

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1 | fee summary sheet cannot "truly and accurately reflect[]" the actual fees incurred, as her attorney

2 | declares. Ex. 7 at 2. Based on the itemized hours, Castro would be entitled at most to $2,520.10,

3 | or 5.8 hours of attorney time and 1.6 hours of paralegal time at the asserted rates.

4 |       Regarding hourly rates, Castro's counsel claims that his $387 rate is commensurate with

5 | both a United States Consumer Law Attorney Fee Survey Report for 2010-2011 (Pl.'s Mot. Ex. 8

6 | (ECF No. 15-8)) and the "Laffey Matrix" of attorney rates prepared by the U.S. Attorney's Office

7 | for the District of Columbia (Pl.'s Mot. Ex. 9 (ECF No. 15-9)). While Castro claims that the

8 | Laffey Matrix and other data provide "conclusive evidence" that the asserted rate is reasonable

9 | (Pl.'s Mot. at 15), the Matrix shows that an attorney with 8-10 years of experience (like Castro's

10 | attorney) averages a $355 rate. On the other hand, the cited Attorney Fee Survey Report indicates

11 | that consumer law attorneys in California averaged a $387 rate as of 2011. *See* Ex. 6 at 19. Castro

12 | cites data from the Survey Report regarding firms with fewer than five attorneys (Pl.'s Mot. at 14),

13 | but does not state the size of her attorney's firm. Indeed, the firm of Krohn & Moss appears to be

14 | significantly larger. *See* http://www.krohnandmoss.com/attorney-profiles.aspx. However, taking

15 | the cited data as a whole, Castro's attorney's asserted rate of $387 appears to be reasonable

16 | because it falls within ranges shown in the data and matches the Survey Report rate for California

17 | attorneys in 2011. As to paralegal rates, Castro does not directly address applicable rates, but the

18 | Laffey Matrix indicates that $145 (Castro's asserted rate) would be a reasonable rate in the 2012-

19 | 2013 time frame. *See* Ex. 9. Accordingly, the Court finds that there is sufficient support in this

20 | case for a $387 hourly rate for Castro's attorney and a $145 hourly rate for paralegal services.

21 |       Aside from the computational errors noted above, the hours itemized in Castro's Statement

22 | of Services do not appear excessive, each billed activity is explained with sufficient detail, and a

23 | total of 7.7 combined attorney and paralegal hours to take a suit from initial investigation to final

24 | judgment seems reasonable. However, the Court adjusts the fee amount to the sum that is

25 | supported by the itemized hours and rates, for a total $2,520.10 under the lodestar method.

26 |       Castro also requests $465.00 in costs, comprising filing and service fees. Ex. 6 at 2.

27 | Because nothing on the invoice appears unnecessary, this Court awards Castro her requested costs.

28 |

Case No.: 13-CV-02555-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

**IV.    CONCLUSION**

For the foregoing reasons, Castro's motion for default judgment is GRANTED in part and DENIED in part. Castro is awarded $4,485.10 in damages, attorney fees, and costs according to the following:

Castro's motion for default judgment against CRS for violation of the Fair Debt Act is GRANTED. Castro's request for $1,000 in damages under 15 U.S.C. § 1692k is DENIED. Castro is awarded $750 in damages.

Castro's motion for default judgment against CRS for violation of the Rosenthal Act is GRANTED. Castro's request for $1,000 in damages under Cal. Civ. Code § 1788.30(b) is DENIED. Castro is awarded $750 in damages.

Castro's request for $2,824.90 in attorney fees is DENIED. Castro is awarded $2,520.10 in attorney fees. Castro's request for $465.00 in costs is GRANTED.

The Clerk shall close the case file.

**IT IS SO ORDERED.**

Dated: March 13, 2014

_Lucy H. Koh_
_____
LUCY H. KOH
United States District Judge

United States District Court
For the Northern District of California